UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIM. NO. 7:21-CR-15 (HL) |
| vs. | : |
| | : |
| WEN XUE LIN, | : |
| | : |
| Defendant | : |
| | : |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and WEN XUE LIN, hereinafter referred to as "LIN" or "Defendant," and Defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Indictment against Defendant in this matter with Defendant's attorney and Defendant's attorney has explained to Defendant his understanding of the Government's evidence.

(2)

Defendant understands that Defendant is not required to plead guilty, and that Defendant has the right to plead not guilty and to elect instead to be tried by jury. Defendant understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the United States would have the burden of proving Defendant's guilt beyond a reasonable doubt. Defendant understands that Defendant would be entitled to the services of an attorney at all stages of such a trial. Defendant understands that Defendant would be entitled to confront and to cross-examine the United States' proof, and to present witnesses and evidence in Defendant's own behalf. Defendant understands that Defendant would have the right to testify in Defendant's own behalf,

1

but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's attorney. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. Defendant therefore agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in Paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)   The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count 1 of the Indictment which charges that between at least on or about September 7, 2019, through on or about September 26, 2019, Defendant did combine, conspire, confederate, agree, and have a tacit understanding with others to devise and willfully participate in, with knowledge of its fraudulent nature and with the intent to defraud, a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations and

2

BG

promises and in doing so, for the purpose of executing and in furtherance of said that scheme and artifice to defraud, caused sounds and signals to be transmitted by means of wire communications in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343; all in violation of Title 18, United States Code, Section 1349.

(B)     That Defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant on Count 1 to a sentence of up to twenty (20) years imprisonment, a maximum fine of 1,000,000.00, or both, and a term of supervised release of up to three (3) years. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00.

(C)     The Defendant acknowledges and understands that the Court is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office. The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the Government, Defendant's attorney, or the Probation Office which is different from the guideline range computed by the Probation Office in the Presentence Investigative Report and found by the Court to be the correct guideline range.

(D)     The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to determine the appropriate guideline sentence until after a Presentence Investigative Report has been completed. The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the Presentence Investigative Report and challenge any facts reported therein. The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the

Defendant or Defendant's attorney to the Presentence Investigative Report or the Court's rulings thereon will not be grounds for withdrawal of the plea of guilty.

(E)   Defendant understands and has discussed with Defendant's attorney that after the Court determines the applicable guideline range of this case, the Court has the authority under certain circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines.

(F)   Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)   **Waiver of Appeal Rights and Right of Collateral Attack:**

Understanding that Title 18, United States Code, Section 3742 provides for appeal by a Defendant of the sentence under certain circumstances, Defendant waives any right to appeal the imposition of sentence upon Defendant, including the right to appeal the amount of restitution imposed, if any, except in the event that the District Court imposes a sentence that exceeds the advisory guideline range as that range has been calculated by the District Court at the time of sentencing, or in the event that the District Court imposes a sentence in excess of the statutory maximum.

Defendant waives any right to collaterally attack Defendant's conviction and sentence under Title 28, United States Code, Section 2255, or to bring any other collateral attack, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. This provision shall not bar the filing of a petition for writ of habeas corpus, as permitted by Title 28, United States Code, Section 2241.

Defendant waives any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c)(2), except in the event of a future retroactive amendment to the sentencing guidelines which would affect Defendant's sentence.

Defendant and the Government agree that nothing in this plea agreement shall affect the Government's right or obligation to appeal as set forth in 18 U.S.C. § 3742(b). If, however, the Government appeals Defendant's sentence pursuant to this statute, Defendant is released from Defendant's waiver of Defendant's right to appeal altogether.

Defendant acknowledges that this waiver may result in the dismissal of any appeal or collateral attack Defendant might file challenging his/her conviction or sentence in this case. If Defendant files a notice of appeal or collateral attack, notwithstanding this agreement, Defendant agrees that this case shall, upon motion of the Government, be remanded to the District Court to determine whether Defendant is in breach of this agreement and, if so, to permit the Government to withdraw from the plea agreement.

(H)    Defendant and the Government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The Defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(I)    Defendant understands, and has fully discussed with defendant=s attorney, that concerning Count One the Court shall order total restitution in this case pursuant to 18 U.S.C. ' 3663 or 18 U.S.C. §3663A and that defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community. Defendant agrees that the total amount of restitution reflected in this Plea Agreement results from Defendant's conduct as described in the indictment to which the Defendant is entering a plea of guilty.

(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)   That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant. At the sentencing, the Government agrees that it will, unless there is evidence of further criminal conduct, make a recommendation that Defendant be sentenced at the bottom of the calculated guideline sentencing range.

(B)   If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Federal Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive an appropriate downward departure for such acceptance. It is entirely within the Court's discretion whether or not the Defendant would be entitled to any reduction based upon an acceptance of responsibility. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any

agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's attorney, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Presentence Investigative Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the Government could prove the following beyond a reasonable doubt:

DEFENDANT LIN admits that the allegations contained in Count One of the Indictment, including the manner and means and overt acts, are true and correct.

On September 26, 2019, United States Secret Service in Albany, Georgia was contacted by a Walmart investigator, in reference to gift cards being loaded with known fraudulently obtained funds. The investigator was able to use Walmart's system to see where cards were being loaded with fraudulently obtained funds, but only after the transactions had taken place. In an effort to locate and apprehend the person loading the gift cards who was identified as defendant LIN, Special Agent James Harris responded to several Walmart stores in South Georgia, including those in Fitzgerald, Georgia; Waycross, Georgia; and Hazlehurst, Georgia.

The Jeff Davis County (Georgia) Sheriff's Office also received a call from the investigator, who advised them of what was going on with the fraudulent cards across the area.

On September 26, 2019, LIN had used fraudulently obtained Walmart gift cards to purchase other gift cards in Tifton and Fitzgerald in the Middle District of Georgia, as well as in Douglas, Waycross, and then in Hazlehurst. On September 24 and 25, LIN had conducted the same kinds of transactions in various cities in Georgia, including Winder, Athens, Madison, Forsyth, Macon, Warner Robins, Perry, Cordele, Americus, Albany, and again in Tifton. The Walmart investigator was able to access records that allowed him to see video taken at the store after the transactions were made and to provide information concerning the suspect, including appearance and clothing.

On September 26, 2019, in response to the tracking which was being conducted that indicated that fraudulent gift card purchases had been made, Jeff Davis County deputies arrested LIN after he left the Walmart in Hazlehurst. LIN's vehicle was secured and towed to the Jeff Davis County Sheriff's Office. During a search incident to arrest of Lin a white Apple I Phone which was seen being used on Walmart surveillance being used by LIN was seized from LIN'S person. That same day, LIN was interviewed by USSS after he was read his constitutional rights under Miranda and agreed to talk. LIN told the agent that he would receive a gift card number from sources in China through an app on his smart phone. Once the gift card number was loaded onto his phone, LIN would enter a Walmart and purchase other kinds of gift card using the Walmart gift card number that had been provided to access the funds. It was not necessary to have the physical Walmart gift card to access and use the funds, only the number. Once LIN purchased the new gift card with the funds from the initial gift card number sent by the source in China, LIN would then send the new gift card number back to China. In addition to transmitting

the card numbers back to China, LIN used some of the funds on the cards to purchase cigarettes at the Walmart stores. LIN also stated that he was paid for purchasing the gift cards through another app on his phone. LIN claimed that the person he was buying the gift cards was "MeMe," that he was instructed not to get more than $4500 in gift cards at a time and to go to different stores. He stated that he was never specifically told the funds were derived from fraud.

On September 30, 2019, pursuant to a state search warrant, a Jeff Davis SO investigator, assisted by the Secret Service, searched LIN's vehicle and found 1,298 Walmart Vanilla Mastercard and American Express gift cards with a face value totaling $229,100. There was approximately $40,000 in unused value remaining on those cards. There were also 55 cartons of cigarettes in the vehicle, consistent with the statements made by LIN. Law enforcement also found another cell phone in the console of the vehicle.

Walmart assisted law enforcement in determining the origin of and use of the various Walmart gift cards. Walmart was able to tie, using Walmart surveillance videos and photographs, LIN to 1086 gift card transactions taking place in nine states between September 7, 2019, and September 26, 2019, when LIN was arrested in Jeff Davis County. The gift cards were used to purchase other cards in amount of $287,335.34 during that time, including in the Middle District of Georgia beginning on September 24, 2019.

The Walmart gift cards used in the conspiracy were obtained using a variety of fraudulent schemes including direct contact by phone or email to individuals to use fraud to induce those individuals to purchase and send the gift card numbers to members of the conspiracy. One means to perpetrate the fraudulent scheme involved deceiving Walmart employees into providing gift card numbers believing they were conducting tests on the registers. In those schemes, an unknown person called Walmart stores and posed as an employee of NRC, a

company which updates Walmart's transaction terminals. The caller would advise the Walmart employee to complete a "practice" transaction using a gift card. They would advise the employer to scan the gift card and type a number (for example, 498.05 or 491.91) which appeared to be a code; however, the number was actual a dollar amount that would be loaded on the gift card. The Walmart employee was instructed to press the "tender" button that actually loaded the gift card with the dollar amount that the employee believed was a "code." The caller would then ask the Walmart employee to give the gift card number over the phone. After the employee gave the numbers, they were told to write "void" on the card and place it in the cash drawer. The caller said that the "finance department would know what to do." When to the store's finance department discovered the voided cards, they realized that Walmart was a victim of a scam. During the period of the charged conspiracy, a total of more than $44,559.80 worth of fraud was perpetrated using that means. The Walmart gift card funds were transferred to new gift cards by LIN almost immediately after they fraudulently obtained.

Using that means, a gift card ending in 7789 for $490.00 was loaded by a Walmart associate in a Hazard, Kentucky Walmart on September 25, 2019, at 2:02 p.m. The gift card ending in 7789 was used by LIN to purchase another gift card on September 25,2019, at 2:12 pm in Perry, Georgia. A gift card ending in 5766 for $490.50 was loaded by a Walmart associate in Uvalde, Texas on September 25, 2019, at 1:44 p.m. The gift card ending in 5766 was used by LIN to purchase two separate gift cards totaling $490.50 in Cordele, Georgia on September 25,2019 at 3:07 p.m. Two other gift cards were loaded in Uvalde, Texas on the same date and were then used by LIN to buy other gift cards shortly after in Cordele and Americus, Georgia Walmart Stores. A gift card ending in 5863 for $498.05 was loaded by a Walmart associate in a Myrtle Beach, South Carolina Walmart on September 26, 2019, at 9:35 a.m. That same card was

used by LIN at a Walmart in Tifton, Georgia, at 9:55 and 9:56 a.m., to purchase two different gift cards totaling $498.05. The Myrtle Beach associate loaded three other cards after 10 a.m. that were then used in less than an hour by LIN to buy five more gift cards in the Fitzgerald, Ben Hill County, Georgia Walmart Store.

As to the other means of committing fraud directed at individuals, a gift card ending in 9428 was loaded in Hesperia, California on September 26, 2019, at 10:36 a.m. by an elderly female using $500 in cash. On September 26, 2019, at 2:57 p.m., that gift card was used by Lin to purchase another gift card in Hazlehurst, Georgia, in the amount of $327.52. That card was on LIN when he was arrested. The specifics of that fraud victim could not be determined because the victim used cash to load the card.

On August 5, 2019, another victim was contacted by telephone by an unknown subject posing as an employee of the victim's mortgage company. The subject advised the victim he could lower his monthly mortgage payment. After several emails between the unknown person and the victim, the victim was eventually told that due to the application being back dated he needed to make a mortgage payment with a gift card. On September 18, 2019, at 11:00 and 11:02 a.m., the victim purchased two gift cards with cash totaling $778 at a Manassas, Virginia Walmart and sent them as instructed. LIN used the gift cards to purchase new gift cards in Jonesville, Virginia on the same day, between 12:07 and 12:11 p.m. Getting suspicious, the victim called his mortgage company and was advised that the program he applied for ended in 2016 and that the unknown person is not an employee of that company. That victim completed a police report, which was provided to USSS.

Another individual was deceived into believing he had an outstanding warrant for his arrest and was instructed to send Walmart gift cards to avoid arrest. The individual purchased cards in New York and California, eventually used by LIN to purchase other gift cards.

The defendant admits that he knew, directly or by his own deliberately ignorance of clear and obvious facts which were known to him, that he agreed and participated with other co-conspirators to devise and to commit a scheme, with the intent to defraud, to obtain money by means false and fraudulent representations. Defendant further admits the scheme to defraud was carried out using cellular telephones in interstate and foreign commerce by means of signals transmitted by wire and radio. The parties further stipulate that LIN's role in the scheme was limited to buying gift cards and other items with the gift card numbers provided, that his participation did not involve sophisticated conduct, that he had no contact with or knowledge of specific victims or knowledge that there were victims other than Walmart, and that his role in the overall fraudulent scheme was minor. The Government and defendant stipulate that the overall loss amount resulting from the scheme is $287,335.34, but LIN admits that he was paid only three percent (3%) of the total funds that he converted from Walmart gift cards.

For purposes of restitution, the parties stipulate that defendant is responsible for restitution, jointly and severally with any and all co-conspirators, for actual monetary losses caused by the fraud in an amount to be determined at a later time and presented to the Court.

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with Defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this 29th day of Sept, 2022.

PETER D. LEARY
UNITED STATES ATTORNEY

BY: _____
ROBERT D. MCCULLERS
ASSISTANT UNITED STATES ATTORNEY

13

I, WEN XUE LIN, have read this agreement and had this agreement read to me by my attorney, BARRY GOLDBERG. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

*[signature]*
WEN XUE LIN
DEFENDANT

I, BARRY GOLDBERG, attorney for Defendant WEN XUE LIN have explained the Indictment and the Government's evidence received through discovery and my investigation of the charge to Defendant. I believe Defendant understands the charge against Defendant and the evidence that would be presented against Defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant. To the best of my knowledge and belief, Defendant understands this agreement.

*[signature]*
BARRY GOLDBERG
ATTORNEY FOR DEFENDANT